# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

*In re* UNITED STATES OF AMERICA, *et al.*,
Petitioners.

UNITED STATES OF AMERICA; DONALD J. TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; and ELAINE DUKE, Acting Secretary of Homeland Security,
Petitioners-Defendants,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
Respondent,

REGENTS OF THE UNIVERSITY OF CALIFORNIA; JANET NAPOLITANO, President of the University of California; STATE OF CALIFORNIA; STATE OF MAINE; STATE OF MARYLAND; STATE OF MINNESOTA; CITY OF SAN JOSE; DULCE GARCIA; MIRIAM GONZALEZ AVILA; SAUL JIMENEZ SUAREZ; VIRIDIANA CHABOLLA MENDOZA; NORMA RAMIREZ; and JIRAYUT LATTHIVONGSKORN,
Real Parties in Interest-Plaintiffs.

## PETITION FOR A WRIT OF MANDAMUS
## TO THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## AND EMERGENCY MOTION FOR STAY
## PENDING CONSIDERATION OF THIS PETITION

CHAD A. READLER
*Acting Assistant Attorney General*

BRIAN STRETCH
*United States Attorney*

HASHIM M. MOOPPAN
*Deputy Assistant Attorney General*

MARK B. STERN
ABBY C. WRIGHT
THOMAS PULHAM
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2000*

# CIRCUIT RULE 27-3 CERTIFICATE

**Counsel for Defendants:**

Mark B. Stern (Mark.Stern@usdoj.gov)
Abby C. Wright (Abby.Wright@usdoj.gov)
Thomas Pulham (Thomas.Pulham@usdoj.gov)
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000
Fax: (202) 514-8151

**Counsel for Plaintiffs:**

*Regents of the University of California et al.*: Mark H. Lynch (mlynch@cov.com); Jeffrey M. Davidson (jdavidson@cov.com); Alexander A. Berengaut (aberengaut@cov.com); Megan A. Crowley (mcrowley@cov.com)

*States of California, Maine, Maryland, and Minnesota*: James Zahradka (james.zahradka@doj.ca.gov); Ronald Lee (ronald.lee@doj.ca.gov)

*City of San Jose*: nfineman@cpmlegal.com; bdanitz@cpmlegal.com; tprevost@cpmlegal.com; pluc@cpmlegal.com.

*Dulce Garcia, Miriam Gonzalez Avila, Saul Jimenez Suarez, Viridiana Chabolla Mendoza, Norma Ramirez, and Jirayut Latthivongskorn*: Ethan Dettmer (edettmer@gibsondunn.com); Jesse Gabriel (jgabriel@gibsondunn.com); Katie Marquart (kmarquart@gibsondunn.com); Kelsey Helland (khelland@gibsondunn.com); Mark Rosenbaum (mrosenbaum@publiccounsel.org)

*County of Santa Clara and Service Employees International Union Local 521:* Eric Prince Brown (ebrown@altber.com, smendez@altber.com); Greta Suzanne Hansen (greata.hansen@cco.sccgov.org); James Robyzad Williams (james.williams@cco.sscgov.org); Jonathan David Weissglass (jweissglass@altshulerberzon.com, smendez@altschulerberzon.com); Laura Susan Trice (Laura.Trice@cco.sscgov.org; Alicia.casteneda@cco.sscgov.org); Marcelo Quinones (marcelo.quinones@cco.sscgov.org; leesa.rivera@cco.sscgov.org); Stacey M. Leyton (sleyton@altshulerberzon.com, mpelrine@altshulerberzon.com)

Defendants request urgent relief on this matter because the district court has ordered the government to file an amended administrative record and disclose privileged documents on October 27, 2017, and the government remains subject to burdensome discovery, including the depositions of high-ranking officials.

Counsel for plaintiffs were notified of this motion on October 20, 2017, and all oppose the motion. Service will be accomplished via the district court's CM/ECF system. The district court will be served a copy of the petition at sarah_badr@cand.uscourts.gov.

## INTRODUCTION AND SUMMARY

Pursuant to the All Writs Act, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure, the federal government respectfully asks this Court to issue a writ of mandamus to stay the district court's order to expand the administrative record to include sensitive privileged materials—including documents from the White House—and to stay ongoing discovery, including the depositions of high-ranking government officials. Earlier today, October 20, the Court of Appeals for the Second Circuit issued an emergency stay of discovery and record supplementation in parallel cases in New York. Order, *In re Duke*, No. 17-3345 (Oct. 20, 2017) (Cabranes, J.).

In these cases challenging the decision of the Department of Homeland Security (DHS) to wind down of the policy known as Deferred Action for Childhood Arrivals (DACA), the government seeks mandamus because the district court, before briefing on the government's threshold arguments that the challenged action is non-reviewable, has permitted the plaintiffs to embark on an improper hunt for the subjective motivations behind an administrative action, including through vast and erroneous "supplementation" of the administrative record; ordered the government to file publicly documents protected by a variety of privileges including executive privilege, the deliberative process privilege, and the attorney-client privilege; directed not only agencies but also the White House to search for and assert privilege over an ill-defined universe of documents; and permitted excessively burdensome discovery to proceed, including the unnecessary depositions of numerous high-ranking government officials.

The district court's conduct in this case departs from settled principles of judicial review of agency action in several crucial respects, any of which would warrant the exercise of this Court's immediate review. Taken together, the court's errors reflect an extraordinary disregard of longstanding doctrine and basic tenets of inter-branch comity. If accepted as precedent for challenges to agency action, this approach will threaten the separation of powers and make standard a manner of litigation that is both unduly intrusive and practically impossible for the government. Because the effect of the district court's errors is immediate and irreparable, we also ask that the Court issue an administrative stay pending its consideration of this petition.

**1.** Plaintiffs in these related cases under the Administrative Procedure Act (APA) challenge the decision of the Acting Secretary of Homeland Security to wind down DACA. Under that policy, DHS had previously determined, as an exercise of prosecutorial discretion, to forbear from seeking removal of a certain category of undocumented aliens. To the extent that the Acting Secretary's decision to exercise prosecutorial discretion in a different manner is reviewable at all, "[t]he task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)).

The district court has not undertaken that analysis. Instead, it has deferred briefing of the legal issues raised by plaintiffs' challenges, as well as the threshold issues

to be raised by the government, and has proceeded on the assumption that submission of a "complete" administrative record requires disclosure of privileged communications and depositions of decisionmakers. These determinations turn on the mistaken premise that the court's role is to review not what the Acting Secretary said in her decision, but what she and her subordinates thought or said during deliberations. But, as the Supreme Court has long made clear, it is "not the function of the court to probe the mental processes" of the agency. *United States v. Morgan*, 304 U.S. 1, 18 (1938).

The district court has also required the government to supplement the administrative record with "all DACA-related materials" considered by anyone "anywhere in the government" who provided the Acting Secretary with written or verbal input on the policy decision. Add. 26-27. The court further directed that the record be supplemented by materials considered by the former Secretary of DHS. *Id.* at 13. Requiring the government to expand the scope of the administrative record beyond the materials considered by the decisionmaker is clear legal error. *See Thompson v. U.S. Department of Labor*, 885 F.2d 551, 556 (9th Cir. 1989) (asking whether documents "were before the Secretary at the time of the decision").

**2.** Before even considering such intrusions into governmental function and privilege, it was incumbent on the district court to address threshold legal issues that might obviate the need to consider the administrative record at all. Among other grounds, it will be necessary to determine (after briefing) whether this suit is barred by 8 U.S.C. § 1252(g), which prohibits actions challenging "'deferred action' decisions and

3

similar discretionary decisions . . . outside the streamlined process that Congress has designed." *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 & n.9 (1999) (*AADC*). Although the district court briefly expressed its views that the jurisdictional bar did not apply, Add. 30, it did so without briefing from the parties, without acknowledging that this case (unlike *Kwai Fun Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004)) involves deferred action, and without addressing *AADC*. Assuming jurisdiction is found to exist, the district court will also need to determine whether the decision to rescind DACA is an unreviewable exercise of prosecutorial discretion. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821 (1985).

**3.** The court's error is magnified by the extent of the intrusion into the Executive Branch it has sanctioned. The court's requirement that the government search for and supplement the record with "all DACA-related materials considered by persons (anywhere in government) who thereafter provided Acting Secretary Duke with written [or verbal] advice," sweeps so broadly as to extend to the White House and the highest levels of other agencies. Add. 26-27. The court's order requires all these entities to search not only for communications with the Acting Secretary but to search as well for any "DACA-related" materials that they ever "considered." *Id.* The Supreme Court has made clear that in these circumstances, a court of appeals properly exercises its mandamus authority. *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 390 (2004).

The district court has similarly disregarded the government's assertions of Executive privilege, requiring the government to publicly disclose a group of

documents that include a White House memorandum. And the district court provided no basis for its conclusion that the privilege did not apply or should be overcome despite it being "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974)

The district court has likewise expressed its approval of plaintiffs' attempt to depose not only the Acting Secretary's closest advisors but also the Acting Secretary herself in clear disregard of the rule that "[i]nquiry into the deliberative processes of administrators is generally disfavored," *William Jefferson & Co. v. Board of Assessment and Appeals*, 482 Fed App'x 273, 274 (9th Cir. 2012) (citing *Morgan* and upholding a determination that it would be improper to permit the plaintiff to depose members of the Board of Assessment on their deliberative process), and the equally well established principle that "[h]eads of government agencies are not normally subject to deposition." *Kyle Engineering Co. v. Kleppe,* 600 F.2d 226, 231-32 (9th Cir. 1979). Although the district court later suggested that the issue of the Acting Secretary's deposition has not yet been "formally raised," Add. 30, the court's statement that the desire to know what "verbal input" the Acting Secretary received "would justify the deposition," Tr. 10/16/2017, 2017, at 32, demonstrates the intrusive trajectory of discovery it has sanctioned.

**4.** Finally, this Court has already recognized that one of the issues presented here—the requirement to compile a privilege log in an APA action—presents a serious question for mandamus review. *See* Order, *In re Thomas E. Price*, No. 17-71121 (July 27,

2017) (noting that the petition "raises issue that warrant an answer"). In that case—which was relied on by the district court here, Add. 25—the district court held that deliberative materials should be included in the administrative record and should be recorded in a privilege log. *See Institute for Fisheries Resources v. Price*, No. 16-cv-1574, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017). The district court in *Price* recognized, however, that a stay was appropriate pending review of the government's mandamus petition. *Compare* Order Granting Motion To Stay, *Institute for Fisheries Resources v. Price*, No. 16-cv-1574 (N.D. Cal. May 3, 2017), Dkt. 108, *with* Add. 29 (denying stay).

The government therefore asks that this Court grant a stay here—just as the Second Circuit did for the parallel New York proceedings, *see* Order, *In re Duke*, No. 17-3345 (Oct. 20, 2017) (Cabranes, J.)—so that the Court can exercise its mandamus jurisdiction to correct the multiple serious errors that underlie the district court's order.

## STATEMENT

### A.    Overview of Deferred Action and the DACA Policy

**1.** The Immigration and Nationality Act ("INA") charges the Secretary of Homeland Security "with the administration and enforcement" of the INA and "all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Individuals are subject to removal if, *inter alia*, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 567 U.S. 387, 396 (2012); *see* 8 U.S.C. §§ 1182(a), 1227(a).

6

As a practical matter, the federal government cannot remove every removable alien, and a "principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396. DHS officials must first "decide whether it makes sense to pursue removal at all." *Id.* Once removal proceedings begin, officials may decide to grant certain forms of discretionary relief expressly authorized by statute, such as asylum, parole, or cancellation of removal. 8 U.S.C. §§ 1158(b)(1)(A), 1182(d)(5)(A), 1229b. And "[a]t each stage" of the process, "the Executive has discretion to abandon the endeavor." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) (*AADC*). Like other agencies exercising enforcement discretion, DHS must engage in "a complicated balancing of a number of factors which are peculiarly within its expertise." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Deferred action is a practice in which the Acting Secretary exercises discretion "for humanitarian reasons or simply for [her] own convenience," to notify an alien of a non-binding decision to forbear from seeking his removal for a designated period. *See AADC*, 525 U.S. at 483-84; 8 C.F.R. § 274a.12(c)(14) (describing "deferred action" as "an act of administrative convenience to the government which gives some cases lower priority"). Although originally "developed without express statutory authority," individualized deferred action has been accepted by Congress, *see e.g.*, 8 U.S.C. § 1154(a)(1)(D)(i)(II), (IV), and recognized by the Supreme Court as a permissible exercise of administrative discretion, *AADC*, 525 U.S. at 484. In addition to temporary relief from removal, other consequences may flow from a grant of deferred action under

DHS regulations not challenged here, including the ability to apply for work authorization in certain circumstances. *See, e.g.*, 8 C.F.R. § 247a.12(c)(14).

A grant of deferred action does not, however, confer lawful immigration status or provide any defense to removal. *Cf. Chaudhry v. Holder*, 705 F.3d 289, 292 (7th Cir. 2013) (discussing the difference between "unlawful presence" and "unlawful status"). Thus, DHS has the discretion to revoke deferred action unilaterally and an individual with deferred action remains removable at any time. *See AADC*, 525 U.S. at 484-85.

**2.** On June 15, 2012, DHS announced the policy that has since become known as DACA. *See* Memorandum from Janet Napolitano, Secretary, DHS to David Aguilar, Acting Commissioner, U.S. Customs and Border Prot., *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012) (DACA Memo), https://go.usa.gov/xnqY4. DACA makes deferred action available to "certain young people who were brought to this country as children." *Id.* at 1. Following completion of a background check, successful applicants would receive deferred action for a period of two years, subject to renewal. *Id.* at 2-3. The DACA Memo made clear that it "confer[red] no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." *Id.* at 3. DHS later expanded DACA and created a new, similar policy known as Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA).

DAPA and the expansion of DACA were challenged in court. The District Court for the Southern District of Texas issued a nationwide preliminary injunction based on

a likelihood of success on the claim that the policy violated the notice-and-comment requirements of the Administrative Procedure Act (APA). *Texas v. United States,* 86 F. Supp. 3d 591 (S.D. Tex. 2015). The Fifth Circuit affirmed, holding that the policy violated the APA and the INA. *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015). The Supreme Court affirmed the judgment by an equally divided Court, *United States v. Texas,* 136 S. Ct. 2271 (2016), leaving the nationwide injunction in place. In June 2017, Texas threatened to amend its complaint to challenge the original DACA policy.

**3.** On September 5, 2017, DHS decided to wind down the remaining DACA policy in an orderly fashion. *See* Memorandum from Elaine C. Duke, Acting Secretary of Homeland Security, to Citizenship & Immigration Servs. Immigration & Customs Enf't, and Customs & Border Prot., *Rescission of Deferred Action for Child Arrivals* (Sept. 5, 2017) ("Duke Memo"), https://go.usa.gov/xnqYQ. The memorandum provides that DHS will "adjudicate—on an individual, case by case basis—properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents . . . from current beneficiaries whose benefits will expire between the date of this memorandum and March 5, 2018 that have been accepted by the Department as of October 5, 2017." *Id.* The memorandum further provides that the government "[w]ill not terminate the grants of previously issued deferred action or revoke Employment Authorization Documents solely based on the directives in this memorandum" for the remaining periods of deferred action, which may be as late as 2019. *Id.*

**B.     Factual and Procedural Background**

**1.** A number of lawsuits were filed following the September 5 decision to wind down DACA. As relevant here, five groups of plaintiffs brought suit in the Northern District of California. Challenges to the rescission have also been brought in district courts in New York, Maryland, and the District of Columbia.

The plaintiffs here allege that the termination of DACA is unlawful because it violates the APA's requirement for notice and comment rulemaking; is arbitrary and capricious; violates the Regulatory Flexibility Act; denies the plaintiffs due process; violates the Equal Protection Clause; and permits the government to use information obtained from the DACA program in a manner inconsistent with equitable estoppel.

**2.** The district court entered a scheduling order on September 22, 2017, which required the government to produce an administrative record by October 6, permitted discovery over the government's objections, and cut discovery response times to half their usual length. Dkt. 49; *see also* Tr. 09/21/2017, at 22-23. It also referred all discovery disputes to a magistrate judge. The order set November 1 as the due date for motions to dismiss, or for summary judgment or provisional relief, and it set a hearing on motions for December 20, 2017. A bench trial is scheduled for February 5, 2018.

The government filed the administrative record on October 6, Dkt. 64, consisting of the non-privileged materials considered by the Acting Secretary in reaching her decision to rescind the DACA policy. *See* Dkt. 65-3, at 1-2. The government explained in a letter to opposing counsel that "because the administrative

record will not include any privileged documents, the government will not be providing a privilege log on October 6." *Id.* at 2.

**3.** Plaintiffs moved to "complete" the administrative record, and, on October 10, the district court entered an order directing the government to file a privilege log by October 12 and to appear at a hearing on October 16 with "hard copies of all emails, internal memoranda, and communications with the Justice Department on the subject of rescinding DACA." Add. 1. The government filed a privilege log accounting for the privileged documents actually considered by the Acting Secretary in making her decision to rescind DACA, and brought copies of documents identified in the log to the October 16 hearing.

On October 17, the district court granted the plaintiffs' motion to complete the record in substantial part. The court held that plaintiffs had rebutted the presumption of regularity that attaches to agency actions by pointing to "public statements illustrating both DOJ and the White House's direct involvement in the decision to rescind DACA." Add. 22. Turning to the government's privilege log, the court first held that the government had "waived attorney-client privilege over any materials that bore on whether or not DACA was an unlawful exercise of executive power" because the Acting Secretary had pointed to concerns over DACA's legality as part of her justification to rescind the program. Second, the court declared—without elaboration or individualized discussion of any documents—that the government's claim of deliberative process privilege over 35 documents was overridden by an unspecified "need for materials" and

for "accurate fact-finding" and that they must be added to the administrative record Four of these documents were also subject to a claim of executive privilege.

"Based on these premises" the court ordered that the government's administrative record must be supplemented with "all materials actually seen or considered, however briefly, by Acting Secretary Duke in connection with" the challenged decision (except for those documents on the privilege log that the judge had not ordered released); "all DACA-related materials considered by persons (anywhere in government) who thereafter provided Acting Secretary Duke with written advice" or "verbal input regarding the actual or potential rescission of DACA"; "all comments and questions propounded by Acting Secretary Duke to advisors or subordinates or other regarding the actual or potential rescission of DACA and their responses"; and "all materials directly or indirectly considered by former Secretary of DHS John Kelly leading to his February 2017 memorandum not to rescind DACA." *Id.* at 12-13. The district court instructed the government to submit a privilege log for any additional documents withheld from the expanded administrative record, and clarified that this order "is not intended to limit the scope of discovery" sought by plaintiffs. *Id.* at 13.

Five depositions of government officials have taken place so far and six others have been scheduled or noticed, including that of the Acting Secretary. Thus far, pending discovery requests—for DHS alone—has required the collection of more than 1.2 million documents from more than 100 custodians. *See* Add. 6, 9, 12.

**4.** On October 18, the government moved for a stay of discovery and supplementation of the administrative record. The district court denied the government's stay request on October 19. Add. 29.

## ARGUMENT

I. **The Court Should Exercise Its Mandamus Authority To Correct an Order That Disregards Established Principles of Separation of Powers and Judicial Review of Agency Decisions.**

A. **Mandamus Review Is Appropriate.**

This Court has described five considerations for the grant of mandamus. *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977). First, the "party seeking the writ has no other adequate means, such as direct appeal, to attain the relief"; second, "the petitioner will be damaged or prejudiced in a way not correctible on appeal"; third, the district court is "clearly erroneous as a matter of law"; fourth, "the district court's order "is an oft-repeated error, or manifests a persistent disregard of the federal rules"; and fifth, the order "raises new and important problems." *Id.* at 654-55. These factors "serve as guidelines, a point of departure for [the] analysis of the propriety of mandamus relief." *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010). Thus, "[n]ot every factor need be present at once" or even "point in the same direction." *Id.*

These considerations uniformly demonstrate that mandamus review is warranted. The district court's order at issue here will not be reviewable on appeal. Nor can the harms resulting from the order and ongoing discovery be remedied on a later appeal. Privileges will have been breached; the White House and agencies will have been

required to conduct searches and assert privileges (which may then be overridden); and high-ranking government officials will have been deposed. Correcting the district court's drastic departure from basic principles of judicial review of agency action is necessary to preserve the appropriate relationship between the judiciary and the Executive Branch in this case and in agency litigation generally.

The conduct of this litigation departs from established principles of administrative law and inter-branch comity as discussed below. It also raises "new and important problems" not directly addressed by this Court. Inclusion of deliberative materials in the administrative record has been a recurring issue in district courts in this Circuit with significant implications for administrative litigation. As the district court noted, several rulings in the Northern District of California have involved submission of a privilege log. *See* Add. 24. Courts in the Eastern District of California have taken a different view. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 2016 WL 3543203 (E.D. Cal. June 23, 2016) (noting the difference in jurisprudence on this question). Indeed, this Court has already recognized that mandamus review is appropriate in one of the cases relied on by the district court here. *See* Order, *In re Thomas E. Price*, No. 17-71121 (July 27, 2017) (noting that the petition "raises issue that warrant an answer").

**B.**     **The Court Should Vacate the October 17 Order, Which Constitutes Clear and Significant Error, and Direct the District Court To Stay Discovery.**

**1.** The conduct of this litigation upends fundamental principles of judicial review of agency action. In agency review cases, "[t]he APA specifically contemplates judicial

review on the basis of the agency record," which is compiled by the agency itself. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). A court typically reviews the administrative record in considering a dispositive motion to determine whether the decision is adequately supported. In so doing, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) (quoting *Florida Power*, 470 U.S. at 743-44). Rather than permit wide-ranging discovery, "the task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Id.* (same). If the agency's action "is not sustainable on the administrative record made," then the administrative "decision must be vacated and the matter remanded to [the agency] for further consideration." *Camp v. Pitts*, 411 U.S. 138, 143 (1973). And, of course, before considering the merits of an agency decision or the adequacy of the record, a court must first resolve threshold issues such as justiciability.

The district court's order contravenes each of these principles. As the government informed the court, it will be moving to dismiss on threshold grounds that, if accepted, obviate any need to consider the adequacy of the administrative record. Thus, before even considering expansion of the record or allowing discovery to proceed, basic principles of comity required the court to determine whether doing so is permissible or necessary to the resolution of the case. First, the district court must determine whether its exercise of jurisdiction over this suit is altogether barred by 8

U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court held in *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) (*AADC*), that this provision specifically applies to decisions concerning the denial of deferred action. *Id.* at 485 & n.9.[1] If the district court were somehow to find the specific jurisdictional bar inapplicable, it would need to determine whether the decision to rescind DACA is an unreviewable exercise of prosecutorial discretion. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821 (1985); *see also AADC*, 525 U.S. at 489-490 ("[T]he decision to prosecute is particularly ill-suited to judicial review[.]" (quoting *Wayte v. United States*, 470 U.S. 598, 607-08 (1985)). Only if the district court were to reject all threshold grounds for dismissal would it be appropriate to consider the adequacy of the administrative record. And, if it then appeared that supplementation was necessary, the proper course would be to remand to the agency.

Instead, the court has permitted burdensome discovery and expanded the "administrative record" to include "all DACA-related materials considered by persons (anywhere in government) who thereafter provided Acting Secretary Duke with written advice" or "verbal input regarding the actual or potential rescission of DACA." Add.

---

[1] Citing this Court's decision in *Kwai Fun Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004), the district court declared that § 1252(g) was "plainly inapplicable to this action." Add. 30. *Kwai Fun Wong* did not involve denial of deferred action. *AADC* therefore provides more relevant guidance.

26-27. This sweeping expansion includes the highest offices in the Executive Branch, including the White House. The redefined administrative record could potentially include, for example, a communication between the White House and the Attorney General's office if any recipient provided the Acting Secretary with "verbal input." This "record" is at several removes from the axiom that "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

In this case, DHS submitted a proper administrative record consisting of materials that were before the Acting Secretary at the time she made the decision to rescind DACA. Because the district court will be "reviewing the *Secretary's* decision," the submission of this record permits judicial review "based on the full administrative record before the agency *when it made its decision.*" *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original).

It is also consistent with the scheme created by the APA. In formal administrative proceedings, the APA provides that the "exclusive record for decision" consists of "[t]he transcript of testimony and exhibits, together with all papers and requests filed in the proceeding." 5 U.S.C. § 556(e). The administrative record is composed of the materials that are admitted by the agency in the course of the proceeding—and "exclusive[ly]" those materials. Materials that are not "filed in the proceeding" pursuant to the agency's procedures, such as internal agency documents memorializing the agency's own deliberations, are categorically outside the scope of the administrative

record under section 556(e). Although the APA does not contain a parallel provision prescribing the scope of the administrative record for informal agency actions (such as the statement of agency policy here), there is no reason why materials should be treated any differently than when they are created in a formal proceeding. If anything, the informal character of the proceeding gives the agency more, rather than less, latitude in deciding what belongs in the record. *See Vermont Yankee Nuclear Power Corp. v. Natural Res. Defense Council*, 435 U.S. 519, 549 (1978) (court may "not stray beyond the judicial province . . . to impose upon the agency its own notion of which procedures are 'best'")

This Court's decision in *Thompson* does not, as the district court believed, require inclusion in the administrative record of all documents reviewed by the Acting Secretary's subordinates. The Court explained that "the critical inquiry" was whether the documents the petitioner sought to add to the record "were before the Secretary at the time of her decision." 885 F.2d at 555-56. The Court held that the documents at issue in the case were "considered by the Secretary, either directly or indirectly, during [a] motion for reconsideration" because they had been "submitted . . . to the Secretary in [that] motion." *Id.* Thus, when the court referred to a record consisting of "all documents and materials directly *or indirectly* considered by agency decision-makers," it did not have in mind documents reviewed only by subordinates. 885 F.2d at 555.

The district court's expansion of the record is particularly anomalous because of the nature of the decision at issue, a policy determination by the Acting Secretary to wind down, in an orderly fashion, a previous policy of prosecutorial discretion that itself

created no substantive rights. That decision, as the government will explain in its forthcoming dispositive motion, is an unreviewable exercise of prosecutorial discretion. But even assuming that the decision is reviewable, it is a policy determination that does not require any particular evidentiary basis or detailed administrative record. There is no basis for the district court's belief that it is appropriate to require a search for documents throughout the Executive Branch to make sure that the agency is not "withholding evidence unfavorable to its position." Add. 17 (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)).

**2.** The order contravenes settled principles even more flagrantly by requiring the inclusion in the publicly filed record of privileged, deliberative documents and the creation of a privilege log accounting for many more. It is a fundamental that it is "not the function of the court to probe the mental processes" of the agency. *United States v. Morgan*, 304 U.S. 1, 18 (1938). "Just as a judge cannot be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally respected." *United States v. Morgan*, 313 U.S. 409, 422 (1941) ("*Morgan II*"). Thus, in *Morgan II,* the Supreme Court emphasized that the trial court had erred in permitting the deposition of the Secretary of Agriculture "regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates." *Id.* The Court concluded: "[T]he short of the business is that the Secretary should never have been subjected to this examination." *Id.*

Here, the *only* apparent purpose of the record expansion is to examine the mental processes of the decisionmaker—to investigate what the Acting Secretary thought rather than what she decided. But "agency officials should be judged by what they decided, not for matters they considered before making up their minds." *National Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014). Indeed, as the en banc D.C. Circuit has explained, deliberative materials are not merely protected from disclosure—they do not form part of the administrative record at all. *See San Luis Obispo Mothers for Peace*, 789 F.2d 26 (D.C. Cir. 1986) (en banc). Applying the principles disregarded by the district court here, the D.C. Circuit denied a motion to supplement the administrative record with transcripts of a closed-door agency meeting regarding the license application at issue. The court explained that "[j]udicial examination of these transcripts would represent an extraordinary intrusion into the realm of the agency," and that the petitioners must make a "'strong showing of bad faith or improper behavior'" before the court would be "warranted in examining the deliberative proceedings of the agency." 789 F.2d at 44 (quoting *Overton Park*, 401 U.S. at 420). The court analogized an agency's deliberations to the deliberative processes of a court and stated that, "[w]ithout the assurance of secrecy, the court could not fully perform its functions." *Id.* at 45; *see also Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1455-58 (1st Cir. 1992) (upholding omission of documents from administrative record on attorney-client and deliberative-process privilege grounds); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312-13 (S.D.N.Y. 2012) ("[C]ourts have consistently

recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record.").[2]

That the district court believes that it may permissibly question the mental processes of the decisionmaker (and her advisors) is evident from its statements that deposing the Acting Secretary would be proper because it "would be good to know what the verbal input was that was given to her before she made her decision. That alone would justify the deposition." Tr. 10/16/2017, at 32. But it is established that deposing high-ranking officials—a category that in this case includes, at a minimum, Acting Cabinet Secretaries—is to be avoided absent "a finding of extraordinary circumstances or a 'special need.'" *In re United States*, 624 F.3d 1368, 1372 (11th Cir. 2010) (issuing a writ of mandamus to preclude required testimony of EPA Administrator) (quoting *In re United States*, 985 F.2d 510, 512-13 (11th Cir. 1993) (issuing writ of mandamus to preclude 30 minute telephone deposition of FDA

---

[2] Although this Court has not squarely addressed the issue, it has strongly suggested that deliberative materials are not properly part of the record for APA review. *Portland Audubon Society v. Endangered Species Committee*, 984 F.2d 1534 (9th Cir. 1993), involved a request for discovery regarding alleged *ex parte* contacts with the agency charged with granting exemptions from Endangered Species Act requirements. The Court distinguished the purely internal deliberations at issue in the D.C. Circuit's *Mothers for Peace* case (and at issue here) from "allegedly improper *ex parte* contacts between decisionmakers and outside parties." 984 F.2d at 1549. In so doing, the Court approvingly cited *Mothers for Peace* in suggesting that the administrative record includes "neither the internal deliberative processes of the agency nor the mental processes of individual agency members." *Id.* at 1549.

Commissioner)). As this Court has explained, "[h]eads of government agencies are not normally subject to deposition." *Kyle Engineering Co,* 600 F.2d at 231-32.[3]

**3.** The district court further exacerbated its error by ordering the public disclosure of documents over which the government had asserted privilege. The court received no briefing regarding the specific documents identified on the privilege log. Nevertheless, it ordered disclosure of approximately 30 documents protected by the deliberative process privilege with no explanation other than the statement that "[t]he undersigned judge has balanced the deliberative-process privilege factors and determined *in camera"* that documents must be disclosed. Add. 27. Examination of a few of the documents ordered disclosed underscores the impropriety of the district court's disclosure order. As explained on the privilege log, Document Tab #81 (RLIT1888) consists of the Acting Secretary's notes taken during deliberations

---

[3] Other circuits have likewise exercised their mandamus authority to preclude such testimony. *See, e.g., In re McCarthy*, 636 Fed App'x 142, 144 (4th Cir. 2015) (issuing writ of mandamus to preclude deposition of EPA Administrator); *In re United States*, 542 Fed App'x 944 (Fed. Cir. 2013) (issuing writ of mandamus to preclude deposition of the Chairman of the Federal Reserve Board); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (issuing writ of mandamus to preclude deposition of the Vice President's chief of staff); *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (issuing writ of mandamus to preclude testimony of Attorney General and Deputy Attorney General); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (issuing writ of mandamus to preclude testimony of three members of the Board of the FDIC); *Bacon* v. *Department of Housing and Urban Development,* 757 F.2d 265, 269 (Fed. Cir. 1985) (precluding deposition of the Secretary of the Department of Housing and Urban Development); *United States Board of Parole* v. *Merhige*, 487 F.2d 25, 29 (4th Cir. 1973) (issuing writ of mandamus to preclude deposition of members of the Board of Parole).

regarding the rescission of DACA and the seeking of legal advice regarding that policy decision. Such a document is plainly deliberative and protected by privilege. Document Tab #74 (RLIT1879) similarly consists of notes written by the Acting Secretary concerning the implementation of a decision to wind down the DACA policy. The district court offered no explanation of how plaintiffs have met their burden of overcoming the privilege.

The court likewise plainly erred in declaring that "[d]efendants have waived attorney-client privilege over any materials that bore on whether or not DACA was an unlawful exercise of executive power and therefore should be rescinded." Add. 24.[4] The court based its extraordinary ruling on the fact that the Acting Secretary's decision followed consideration of litigation risk and the legality of the DACA policy. Agencies regularly announce their views of what the law requires in the Federal Register, but nobody claims that doing so jeopardizes attorney-client privilege. Nor does consideration of a Justice Department opinion, a salutary agency practice. Even assuming that the correctness of that opinion were ever found to be relevant to disposition of these cases, assessing its correctness would not depend on the "legal research" used to reach that conclusion. Add. 23. There is no basis at all for the district court's belief that "assessing the reasonableness of the Secretary's legal rationale would turn, in part, on how consistent the analysis has been in the runup to the rescission."

---

[4] The government also claimed work product privilege over many documents but the district court did not address this privilege.

*Id.* And even setting aside the fundamental problems with the district court's analysis, a blanket waiver of attorney client privilege was wholly inappropriate. *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010).

The district court also cursorily ordered disclosure of documents covered by executive privilege, declaring in a footnote that none "of these documents fall within the executive privilege." Add. 25 n.7. This unelaborated statement is plainly wrong: Document Tab #19 (RLIT69), for example, is a White House memorandum. The district court provides no basis for its disregard of the presidential communications privilege, a "presumptive privilege" attached to presidential communications that is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974); *In re United States*, 678 Fed. App'x 981 (Fed. Cir. 2017).

**4.** The limitations on intruding into the decisionmaking process also apply outside the context of the APA and have particular force where, as here, a suit raises claims of discriminatory motive. In *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996), the Supreme Court considered whether criminal defendants could obtain discovery to support a "selective prosecution" claim. The Court recognized that such claims "ask[] a court to exercise judicial power over a 'special province' of the Executive," specifically the "constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* at 464 (quoting first *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), and U.S. Const. art. II, § 3). The Court explained that a "presumption of regularity

supports" prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." 517 U.S. at 464 (quoting *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14-15 (1926)). Therefore, before discovery could be permitted, the proponent of a selective prosecution claim would have to put forth "clear evidence" of discriminatory intent. *Id.* at 464-65.

In *AADC*, the Supreme Court held that an even more restrictive rule was required when the claim of selective enforcement related to immigration laws because the concerns raised by such claims are "greatly magnified in the deportation context." *AADC*, 525 U.S. at 489. The Court also recognized that heightened separation of powers concerns arise in this context because discovery may intrude into the conduct of foreign affairs by the Executive Branch. Requests for information could lead to disclosure of not only "normal domestic law enforcement priorities and techniques," but also "disclosure of foreign-policy objective and [in some cases, like *AADC* itself,] foreign-intelligence products and techniques." *Id.* at 490. The Court dismissed "[t]he contention that a violation [of federal law] must be allowed to continue because it has been improperly selected" as "not powerfully appealing." *Id.* at 491. For these reasons, the Court held that "[w]hen an alien's continuing presence in this country is in violation of the immigration laws," the government did not violate the Constitution by basing its deportation decision in part on activity protected by the First Amendment. 525 U.S. at 491-92. This "general rule" was subject only to the "possibility of a rare case in which

the alleged basis of discrimination was so outrageous that the foregoing considerations can be overcome." *Id.* at 491.

**5.** Finally, the Supreme Court's decision in *Cheney* makes clear that, at the very least, mandamus review is warranted for the court's order that the White House conduct a document search and assert privileges. The Supreme Court emphasized that discovery directed to the White House raises "special considerations" regarding "the Executive Branch's interests in maintaining the autonomy of its office" and "[t]he high respect that is owed to the office of the Chief Executive." *Cheney,* 542 U.S. at 385 (alteration in original). The Court specifically rejected the contention that the White House could sufficiently protect itself against intrusive discovery through individual privilege assertions, holding that the White House should not unnecessarily be placed in the position of having to assert executive privilege. *Id.* at 390. As the Court explained, "[o]nce executive privilege is asserted, coequal branches of the Government are set on a collision course" and "[t]he Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives." *Id.* at 389. The burdens placed on the White House here, where the district court's order also permits assertion of privilege, are directly analogous to those deemed improper in *Cheney.* Thus, the district court should have "explore[d] other avenues, short of forcing the Executive to invoke privilege," such as considering the government's dispositive threshold arguments. *Id.*at 390.

*     *     *

In sum, the district court's rulings contain several clear, significant and irreparable errors that would each independently warrant this Court's mandamus review: the requirement to include privileged, deliberative documents in a new "administrative record"; the blanket, erroneous, and virtually unexplained, rejection of privileges regarding the documents already documented on the privilege log; the requirement that the White House search for and assert privileges over documents; and the authorization of discovery in an APA case notwithstanding the government's dispositive threshold arguments.

Each of these errors is symptomatic of a pervasive misunderstanding of the nature of this litigation. It will almost certainly be possible to resolve this litigation on threshold grounds without the need for any discovery or record supplementation. But neither the district court nor this Court need assume that conclusion. It is sufficient to conclude that the district court should not countenance discovery or mandate supplementation of the record without considering the government's threshold arguments, and, if it believes necessary, reviewing the legal issues presented by plaintiffs' challenges. At this juncture, before any such review has taken place, discovery and record supplementation should be halted.

## II. This Court Should Grant a Stay Pending Review of the Petition.

Given the nature of the district court's order and the burdens of ongoing discovery, we ask that the Court grant an immediate administrative stay pending its consideration of the mandamus petition. Absent a stay, the government will suffer

immediate, irreparable, and substantial harm. On the other side of the balance, a stay will not harm plaintiffs: they have demonstrated no reason why they need discovery now versus a week from now, after this Court resolves this petition. Indeed, the Second Circuit granted the government's motion for emergency stay in the New York proceedings pending consideration of a full mandamus petition. Order, *In re Duke*, No. 17-3345 (Oct. 20, 2017) (Cabranes, J.).

For the reasons explained, the order is without basis in law and the government is likely to prevail on its request for mandamus relief. A stay is required to prevent the government from being forced to publicly disclose privileged communications—including those protected by executive privilege—by October 27, and to prevent the violation of established separation-of-powers principles that will occur if the White House is required to search for and assert privilege over its documents.

The burden imposed by ongoing discovery also strongly militates in favor of a stay. The declarations submitted in district court explain that initial searches conducted by DHS components have resulted in the collection for potential review of over 1 million documents for these cases and those pending in New York. Every full-time lawyer on the litigation team at DHS headquarters has been assigned to review documents in the various DACA cases, and lawyers have also been diverted from other legal practice areas. Add. 6-7. Customs and Border Patrol has put on hold all of its electronic discovery computer resources ordinarily used for other cases, and Immigrations and Customs Enforcement has pulled agency counsel and personnel

from immigration court appearances and other regular duties, to assist with discovery in these cases. Add. 3, 13. These efforts are already compromising DHS's ability to meet its other legal and programmatic obligations. *See, e.g.,* Add. 2 (describing delays to "other litigation obligations" and "an ongoing critical surveillance operation"). Agency officials estimate that similar burdens would be necessary to locate materials that fall within plaintiffs' expansive understanding of the administrative record. *See, e.g.,* Add. 9. Moreover, plaintiffs are proceeding with depositions of high-level government officials that will almost certainly call for testimony regarding sensitive privileged matters. Depositions have already begun (and will continue) for advisers to the Secretary, and, as explained, the district court has indicated that it will permit the deposition of the Acting Secretary herself, which has already been noticed by plaintiffs. *See supra* p. 21.

Plaintiffs, on the other hand, will suffer no harm from a temporary delay in discovery while this Court considers the government's petition. The briefing schedule for dispositive motions will not be affected. Nor would a stay of discovery meaningfully delay the resolution of these proceedings, as the district court feared. Add. 30-31.[5] If anything, the receipt of guidance from this Court will eliminate areas of dispute between

---

[5] The district court's claim that "privileged government communications [will not] be publicly disclosed," Add. 31, should not be read to call into question whether the government is currently under an obligation to disclose privileged documents. The court already ordered the disclosure of documents subject to a claim of privilege without the benefit of briefing by the parties, and it makes clear that it will "withhold from public view" those that *it believes* "require withholding," which means that the government is at serious risk of further disclosure orders made without briefing. *Id.*

the parties and help to speed resolution of plaintiffs' claims.

This Court commonly grants stays pending disposition of a writ of mandamus, including in cases involving challenges to discovery orders. *See, e.g.*, Order, *In re United States of America*, No. 17-71692 (July 25, 2017) (staying all proceedings in district court); *Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1106 (9th Cir. 2005); *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1104 (9th Cir. 1996). The appropriateness of a stay in these exact circumstances has been recognized by the Second Circuit, which stayed discovery and record supplementation proceedings in the New York cases, *see In re Duke*, No. 17-3345 (2d Cir. Oct. 20, 20170 (order of Cabranes, J.), and in similar circumstances by another district court in the Northern District of California, which stayed proceedings pending this Court's review of the mandamus petition in *In re Thomas E. Price*, No. 17-71121. *See* Order Granting Motion To Stay, *Institute for Fisheries Resources v. Price*, No. 16-cv-1574 (N.D. Cal., May 3, 2017), Dkt. 108.

## CONCLUSION

For the foregoing reasons, this Court should grant an immediate administrative stay to permit it to consider the petition for writ of mandamus, grant that petition and stay all discovery, and vacate the order of October 17.

Respectfully submitted,

CHAD A. READLER
   *Acting Assistant Attorney General*

BRIAN STRETCH
   *United States Attorney*

HASHIM M. MOOPPAN
   *Deputy Assistant Attorney General*

MARK B. STERN
ABBY C. WRIGHT
THOMAS PULHAM
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-2000*

OCTOBER 2017

## STATEMENT OF RELATED CASES

Petitioners are aware of one related case: *In re Thomas E. Price*, No. 17-71121, which raises closely related issues to those raised in this petition.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the page limit of Ninth Circuit Rule 21-2(c) because the motion does not exceed 30 pages, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14-point Garamond font.

s/ Mark B. Stern
MARK B. STERN

# CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2017, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Service has been accomplished via e-mail to the following counsel:

*Regents of the University of California et al.*: Mark H. Lynch (mlynch@cov.com); Jeffrey M. Davidson (jdavidson@cov.com); Alexander A. Berengaut (aberengaut@cov.com); Megan A. Crowley (mcrowley@cov.com)

*States of California, Maine, Maryland, and Minnesota*: James Zahradka (james.zahradka@doj.ca.gov); Ronald Lee (ronald.lee@doj.ca.gov)

*City of San Jose*: nfineman@cpmlegal.com; bdanitz@cpmlegal.com; tprevost@cpmlegal.com; pluc@cpmlegal.com.

*Dulce Garcia, Miriam Gonzalez Avila, Saul Jimenez Suarez, Viridiana Chabolla Mendoza, Norma Ramirez, and Jirayut Latthivongskorn*: Ethan Dettmer (edettmer@gibsondunn.com); Jesse Gabriel (jgabriel@gibsondunn.com); Katie Marquart (kmarquart@gibsondunn.com); Kelsey Helland (khelland@gibsondunn.com); Mark Rosenbaum (mrosenbaum@publiccounsel.org)

*County of Santa Clara and Service Employees International Union Local 521:* Eric Prince Brown (ebrown@altber.com, smendez@altber.com); Greta Suzanne Hansen (greata.hansen@cco.sccgov.org); James Robyzad Williams (james.williams@cco.sscgov.org); Jonathan David Weissglass (jweissglass@altshulerberzon.com, smendez@altschulerberzon.com); Laura Susan Trice (Laura.Trice@cco.sscgov.org; Alicia.casteneda@cco.sscgov.org); Marcelo Quinones (marcelo.quinones@cco.sscgov.org; leesa.rivera@cco.sscgov.org); Stacey M. Leyton (sleyton@altshulerberzon.com, mpelrine@altshulerberzon.com)

The district court has been provided with a copy of this petition for writ of mandamus.

s/ Mark B. Stern
MARK B. STERN

# ADDENDUM

# TABLE OF CONTENTS

District Court Order, Dkt. No. 67 (October 10, 2017)...........................................Add. 1

Declaration of Vijai Chellappa in Support of Defendant's Opposition to
      Plaintiffs' Motion to Compel Completion of the Administrative Record,
      Dkt. No. 71-3 (October 12, 2017) ...................................................................Add. 2

Declaration of David J. Palmer in Support of Defendant's Opposition to
      Plaintiffs' Motion to Compel Completion of the Administrative Record,
      Dkt. No. 71-4 (October 12, 2017) ...................................................................Add. 5

Declaration of James W. McCament in Support of Defendant's Opposition to
      Plaintiffs' Motion to Compel Completion of the Administrative Record,
      Dkt. No. 71-5 (October 12, 2017) ...................................................................Add. 8

Declaration of Raymond Milani in Support of Defendant's Opposition to
      Plaintiffs' Motion to Compel Completion of the Administrative Record,
      Dkt. No. 71-6 (October 12, 2017) .................................................................Add. 11

District Court Order, Dkt. No. 79 (October 17, 2017).........................................Add. 15

District Court Order, Dkt. No. 85 (October 19, 2017).........................................Add. 29

1
2
3
4

IN THE UNITED STATES DISTRICT COURT

5

FOR THE NORTHERN DISTRICT OF CALIFORNIA

6
7
8

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA and JANET NAPOLITANO,
in her official capacity as President of the
University of California,

         Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and ELAINE
DUKE, in her official capacity as Acting
Secretary of the Department of Homeland
Security,

         Defendants.

_____/

No. C 17-05211 WHA
No. C 17-05235 WHA
No. C 17-05329 WHA
No. C 17-05380 WHA


**ORDER SHORTENING TIME
FOR BRIEFING ON MOTION
TO COMPLETE
ADMINISTRATIVE RECORD**

Plaintiffs' motion to complete the administrative record will be briefed and argued on

the following schedule:

•    Defendants shall file an opposition and a privilege log by **THURSDAY, OCTOBER
12, AT NOON**.

•    Plaintiffs shall file a reply by **FRIDAY, OCTOBER 13, AT NOON**.

•    A hearing is set for **MONDAY, OCTOBER 16, AT 11:00 A.M.**

Defendants shall bring to the hearing hard copies of all emails, internal memoranda, and

communications with the Justice Department on the subject of rescinding DACA.

Dated:   October 10, 2017.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

Add. 1

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | Hon. William Alsup<br><br>Case No. 17-cv-05211-WHA |

**DECLARATION OF VIJAI CHELLAPPA**

I, Vijai Chellappa, do hereby declare and state:

1.      I am an E-Discovery Digital Forensic Analyst with U.S. Customs and Border Protection (CBP), E-Discovery Team, Security Operations, Cyber Security Directorate, Office of Information Technology (OIT).  I have 15 years of experience in the Information Technology field, and I have worked for CBP, OIT since 2009.  I have been an E-Discovery Digital Forensic Analyst since 2011.

2.      I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record. I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

3.      In CBP's efforts to respond to discovery requests in this and related cases, I have assisted in the ongoing process of searching, collecting, reviewing, and analyzing documents

based on searches of more than 70 GB of data (90,219 electronic files) acquired from searches of 12 network drives and approximately 29 workstations.

4.  Additionally, I developed and executed the search of CBP's e-mail mailbox journal servers which consisting of approximately 200 TB of data from CBP e-mail mailboxes to locate potentially responsive e-mail messages.

5.  CBP, OIT has dedicated significant hours and all of the E-Discovery computer search resources to accelerate the total time needed to respond to pending discovery.  To date, I have already expended approximately 48 hours in this effort, to include the searches, data transfers, and refining process for potential discovery material in this and related matters. Additionally, the Agency has experienced impacts to agency function and mission, as all E-Discovery computer server resources were reassigned and diverted to address the search for documents responsive to current discovery requests in the various pending DACA cases. Specifically, all of our work for other cases and court deadlines was put on hold to perform discovery tasks in this and related matters in order to expend the entire resource of E-Discovery's computer server in response to production of this discovery request.  As a result, the agency is already more than a week behind in other litigation obligations and has also fallen behind on an ongoing critical surveillance operation.

6.  Similar burdens would likely be incurred to immediately locate any additional materials that I understand Plaintiffs assert should be part of the administrative record.

I declare that to the best of my current knowledge the foregoing is true and correct.  Executed on this 12th day of October 2017.

Vijai Chellappa

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California, | |
| | Hon. William Alsup |
| Plaintiffs, | |
| v. | Case No. 17-cv-05211-WHA |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, | |
| Defendants. | |

**DECLARATION OF DAVID J. PALMER**

I, David J. Palmer, do hereby declare and state:

1.      I am the Chief of Staff for the Office of the General Counsel in the United States Department of Homeland Security. In this capacity, I supervise attorneys and other professional staff who are coordinating efforts at DHS Headquarters to respond to court orders and discovery requests in this case and other related actions. I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2.      I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

3.      I have reviewed the Plaintiff's Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*), Case No. 17-cv-5211, Dkt.

No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of
Plaintiffs' motion.

4.      If DHS Headquarters were required to search, review, and compile documents
based on Plaintiffs' interpretation of the contents of the proposed administrative record as
defined in their Motion, DHS Headquarters would not have been able to search, collect, review,
or provide the documents by October 6, 2017, nor would it be able to do so by October 12, 2017,
due to the level of effort necessary and the complexity of the undertaking.

5.   In response to the discovery requests served in the various DACA cases pending here and
in the Eastern District of New York, DHS Headquarters is in the process of searching, collecting,
reviewing and analyzing documents from more than 30 custodians which includes a collection of
at least 30,118 documents from DHS Headquarters custodians alone, and likely far more given
potential DHS Headquarters equities in documents that may be in the possession, custody or
control of its component agencies. Similar burdens would likely be incurred to locate the
materials Plaintiffs assert should be part of the administrative record.

6.   We have dedicated a significant number of staff and hours to the efforts.  For
example, to date we have already expended more than 150 hours on compiling documents for
potential discovery in the various DACA cases.  We would experience impacts to agency
functions and mission, as resources and personnel would have to be reassigned and diverted to
address compiling the administrative record pursuant to Plaintiff's interpretation.  For example,
we have already diverted staff from normal operational duties such as preventative maintenance
of information technology systems and resolving customer issues.  Litigation attorneys recruited
to review and analyze documents in this action and other related actions also have full dockets of
other litigation matters with pending briefing and discovery deadlines.  All full time employees

on the DHS Headquarters litigation team have been assigned to review documents in the various DACA cases and there is no prospect of reassigning or rebalancing their work in other cases.  In order to accomplish the review and analysis of documents, DHS Headquarters has also diverted attorney resources from five other legal practice areas.

7.      Even with these diverted resources, given the careful review that must be conducted, the volume of the records, and prevalence of privilege issues, the agency would require substantial time and a significant expenditure of resources to identify and assess properly documents within the Plaintiffs' definition of administrative record.

8.      The agency, however, is taking extraordinary steps to devote the resources necessary to accelerate the total time needed to respond to pending discovery.  Given the number and complexity of documents at issue, the multiple layers of review required, and the difficulty of the issues presented, the agency's best, good faith analysis is that the agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 12, 2017 that would fit Plaintiffs' definition of an administrative record.


I declare that to the best of my current knowledge the foregoing is true and correct.  Executed on this 12 day of October 2017.

DAVID J. PALMER

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California, | |
| | Hon. William Alsup |
| Plaintiffs, | |
| | Case No. 17-cv-05211-WHA |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, | |
| Defendants. | |

**DECLARATION OF JAMES W. McCAMENT**

I, James W. McCament, do hereby declare and state:

1.      I am the Deputy Director of U.S. Citizenship and Immigration Services.  I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2.      I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

3.      I have reviewed the Plaintiff's Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*, Case No. 17-cv-5211, Dkt. No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of Plaintiffs' motion.

4.     If we were required to search, review, and compile documents in our agency based on Plaintiffs' interpretation of the contents of the administrative record as defined in their Motion, our agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 13, 2017 due to the level of effort and complexity of the undertaking.

5.     In response to the discovery requests served in the various DACA cases pending here and in the Eastern District of New York, USCIS is in the process of searching, collecting, reviewing and analyzing documents from more than approximately 70 custodians, including more than 260,000 emails in addition to documents from approximately 30 shared drives or hard drives. We have dedicated significant staff and hours to the efforts and thus have diverted staff from meeting critical agency goals. For example, to date, I understand that we have already expended more than an estimated 290 hours on identifying and coordinating with custodians, and searching and compiling documents for potential discovery in this and related matters. Similar burdens would likely be incurred to locate the materials Plaintiffs assert should be part of the administrative record.

6.     We would experience impacts to agency function and mission as resources and personnel would have to be reassigned and diverted to address compiling Plaintiff's interpretation of the administrative record. For example, as part of the ongoing efforts to respond to discovery requests in the various pending DACA cases, the Office of Information Technology (OIT) team has made responding to discovery requests in the various pending DACA cases its exclusive focus to meet the Court deadline. As a result, OIT postponed several other jobs, including three projects and two investigations that have been put on hold to support this and related case matters. The U.S. Citizenship and Immigration Services Office of the Chief

2

Counsel had to shift personnel to respond to discovery requests and the majority of assigned Counsels time is dedicated to discovery, whereas in their normal course of business, they would have been providing legal guidance on a wide array of issues. Finally, various reporting requirements and requests have had to be delayed so that resources could be reallocated to the discovery in this case and related case matters.

7.     Even with these diverted resources, given the careful review that must be conducted and the volume of the records at issue, the agency would require substantial time and a significant expenditure of resources to find documents within the Plaintiffs' definition of administrative record.

9.     The agency, however, is taking extraordinary steps to devote the resources necessary to accelerate the total time needed to respond to pending discovery.  Given the number and complexity of documents at issue, the multiple layers of review required, and the difficulty of the issues thereby presented, the agency's best, good faith analysis is that the agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 13, 2017 that would fit Plaintiffs' definition of administrative record.


I declare that to the best of my current knowledge the foregoing is true and correct.  Executed on this _12_ day of October 2017.

James W. McCament

3

Add. 10

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

REGENTS OF UNIVERSITY OF CALIFORNIA
and JANET NAPOLITANO, in her official
capacity as President of the University of
California,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and ELAINE DUKE,
in her official capacity as Acting Secretary of the
Department of Homeland Security,

Defendants.

Hon. William Alsup

Case No. 17-cv-05211-WHA

**DECLARATION OF RAYMOND MILANI**

I, Raymond Milani, do hereby declare and state:

1.       I am an Associate Legal Advisor with the Office of the Principal Legal Advisor

(OPLA), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland

Security (DHS).  OPLA is charged by statute with representing the agency in civil immigration

proceedings before the nation's immigration courts and with providing specialized legal advice

to agency personnel.  6 U.S.C. § 252(c).  I make the following statements based on my personal

knowledge and upon information furnished to me in the course of my official duties.

2.       In my position, I assist OPLA's legal divisions during the entire eDiscovery

lifecycle, to include the distribution and monitoring of preservation notices, coordinating with

ICE's Office of the Chief Information Officer (OCIO) to collect electronically stored data in a

defensible manner, process, analyze, and search electronically stored information, set up

documents for review and redaction, and produce reviewed documents in a format and manner agreed to by opposing counsel/parties and in compliance with the Federal Rules of Civil Procedure. I am also involved in all aspects of the acquisition process for eDiscovery software and supporting systems (market research, statement of work, proposal evaluations, contract awards); responsible for the administration and configuration of eDiscovery software; am a liaison to OCIO on all issues related to eDiscovery and the support and maintenance of the application; and a point of contact assisting other DHS components with their eDiscovery implementation and acquisition. I have performed these functions since February 2008.

      3.      I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

      4.      I have reviewed Plaintiffs' Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*), Case No. 17-cv-5211, Dkt. No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of Plaintiffs' motion.

      5.      In the course of responding to discovery requests in this and related litigation initiated against the federal government related to Deferred Action for Childhood Arrivals (DACA), ICE is in the process of searching, collecting, reviewing, and analyzing documents from 26 custodians, including more than 872,000 documents.

      6.      For context, in less than five days, ICE has already expended more than 220 hours on compiling documents for potential discovery in this and related DACA litigation. Similar burdens would likely be incurred to locate the materials Plaintiffs assert should be part of the administrative record.

7.      Consequently, an effort to satisfy Plaintiffs' "administrative record" interpretation would impose severe impacts upon agency function and mission, with resources and personnel reassigned and diverted to address compiling Plaintiff's interpretation of the administrative record.  For example, ICE has delayed and put at risk other case deadlines in an effort to respond to discovery requests in the various pending DACA matters.  Work on those non-DACA matters had to be halted to address discovery in this and related matters.  ICE has pulled agency counsel and personnel from immigration court appearance responsibilities and other regular duties, essentially, having to devote 1 out of every 14 attorneys in ICE's legal offices across the country to handle the discovery in this and related DACA lawsuits filed against the federal government.  And, even with such diverted resources, which are currently focused on general discovery obligations arising incident to such litigation, the careful review required to comb through the volume of records at issue and identify those that specifically satisfy Plaintiffs' "administrative record" interpretation would likely require substantial additional time.

8.      Based on my experience, the efforts ICE has undertaken to respond to this and related DACA litigation is completely unprecedented, in terms of devotion of resources necessary to accelerate discovery production efforts.  In responding to DACA-related discovery, ICE began its collection late Wednesday, October 4, and all potentially responsive records were assembled for processing by Friday morning, October 6.  ICE's OCIO assigned 2 Active Directory Exchange (ADEX) personnel to work on the collection of documents from 26 custodians.   ICE personnel spent a combined total of 220 hours on the project from early Wednesday evening, October 4, until late Monday afternoon, October 9.  These efforts included substantial overnight and (holiday) weekend work. This size of this data pull was approximately 872,000 documents and 196 GB of data.

9.      The agency has also devoted 82 individuals, the vast majority of whom are attorneys, to review the data collected to date. The discovery responses alone have impacted ICE's mission. One example is the delay in document review in another important district court class action suit.  ICE placed that entire discovery project on hold for more than three business days to accommodate the DACA litigation discovery effort.

I declare that to the best of my current knowledge the foregoing is true and correct.  Executed on this 12th day of October 2017.

Raymond Milani

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA and JANET NAPOLITANO,
in her official capacity as President of the
University of California,

            Plaintiffs,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and ELAINE
DUKE, in her official capacity as Acting
Secretary of the Department of Homeland
Security,

            Defendants.

                          /

No. C 17-05211 WHA
No. C 17-05235 WHA
No. C 17-05329 WHA
No. C 17-05380 WHA

**ORDER RE MOTION
TO COMPLETE
ADMINISTRATIVE RECORD**

**INTRODUCTION**

      Under the Administrative Procedure Act, plaintiffs seek to compel completion of the

administrative record.  Federal defendants oppose.  For the reasons herein, plaintiffs' motion is

**GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

      On June 15, 2012, the Secretary of the Department of Homeland Security issued a

memorandum promulgating a deferred action policy for those without lawful immigration status

who came to the United States as children, were continuous residents in the United States for at

least five years, had graduated from high school, obtained a GED, or served in the military, and

met certain other criteria — a memorandum and policy known as Deferred Action for Childhood Arrivals, "DACA" for short (Dkt. No. 64-1 at 1–3).[1]

After the change in administrations in 2017, the new Secretary of DHS, John Kelly, announced that DACA would be continued notwithstanding the rescission of other immigration policies (*id.* at 230). This was done despite, and with the knowledge of, the decision of the Court of Appeals for the Fifth Circuit in *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), invalidating a different deferred action policy and the Supreme Court's affirmance of that decision by an equally divided vote, *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam).

On September 5, 2017, however, the Acting Secretary of DHS, Elaine Duke, reversed the agency's position and announced DACA's end, effective March 5, 2018.

We now have five lawsuits in this district challenging that rescission.[2] Each action is proceeding on a parallel track and on the same schedule, which schedule was designed to reach a decision on the merits and to allow appellate review by the March 5 deadline.[3]

Pursuant to the scheduling order, the federal defendants filed the administrative record on October 6. It consisted of fourteen documents spanning 256 pages, each of which was already available to the public, and had, in fact, already been filed in this action (Dkt. No. 49 ¶ 3; Dkt. No. 64-1).

In unison, plaintiffs now move to require completion of the administrative record in accordance with Section 706 of Title 5 of the United States Code. They argue that the current record is incomplete because it contains only documents personally considered by the Acting Secretary (and then only some considered by her) and excludes any and all other documents that indirectly led to the rescission.

---

[1]   All docket numbers herein refer to the docket in Case No. C 17-05211 WHA.

[2]   There are two additional DACA lawsuits proceeding in the Eastern District of New York before Judge Nicholas Garaufis, *State of New York v. Trump*, Case No. 17-cv-05228 NGG, and *Vidal v. Baran*, Case No. 16-cv-04756 NGG.

[3]   The fifth lawsuit, *County of Santa Clara v. Trump*, Case No. 17-cv-05813 HRL, was related after plaintiffs' motion was fully briefed and argued.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    The federal defendants oppose, arguing that they have already filed a complete

2    administrative record, which they contend is properly limited to unprivileged documents

3    actually considered by the "decision-maker," here, the Acting Secretary (Opp. at 8–9).

4        This order follows full briefing and oral argument and the Court's review of all

5    materials *in camera* that appeared on the government's privilege log.

**ANALYSIS**

6

7    **1.    SCOPE OF THE ADMINISTRATIVE RECORD.**

8        Section 706 of the APA provides that judicial review of agency action shall be based

9    on "the whole record." The administrative record "is not necessarily those documents that the

10   agency has compiled and submitted as the administrative record" but rather "consists of all

11   documents and materials directly or *indirectly* considered by agency decision-makers and

12   includes evidence contrary to the agency's position." *Thompson v. United States Dep't of

13   Labor*, 885 F.2d 551, 555–56 (9th Cir. 1989). This includes not only documents that "literally

14   pass[ed] before the eyes of the final agency decision maker" but also documents that were

15   considered and relied upon by subordinates who provided recommendations to the decision-

16   maker. *People of State of Cal. ex rel. Lockyer v. United States Dep't of Agriculture*, Nos.

17   C05-3508 & C05-4038, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) (Magistrate Judge

18   Elizabeth Laporte) (internal citations and quotations omitted); *see also Amfac Resorts, L.L.C. v.

19   United States Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (Judge Royce

20   Lamberth).

21       The requirement that a reviewing court consider "the whole record" before rendering a

22   decision "ensures that neither party is withholding evidence unfavorable to its position and that

23   the agencies are not taking advantage of post hoc rationalizations for administrative decisions.

24   *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

25       While it is presumed that the administrative record submitted by defendants is complete,

26   plaintiffs can rebut this presumption with "clear evidence to the contrary." *Cook Inletkeeper v.

27   EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735,

28   740 (10th Cir. 1993)).

United States District Court

For the Northern District of California

Defendants contend a showing of bad faith or impropriety is required in order to compel a complete production of the administrative record.  This is incorrect.  True, bad faith is one basis for requiring supplementation of an administrative record, but it is not the exclusive basis.  Our court of appeals has repeatedly recognized other grounds for requiring supplementation, including where it appears the "agency relied on documents not [already] included in the record."  *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982)*; Fence Creek Cattle Co. v. United States Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *see also Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

The "bad faith" standard of *Overton Park* applies where, though an administrative record exists, plaintiffs ask to go beyond the record that was before the agency and inquire into the thought processes of decision-makers —  in *Overton Park*, by taking the testimony of agency officials.  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Our plaintiffs are not seeking materials beyond what were already considered, directly or indirectly, by the decision-maker, and therefore need not show bad faith.  Supplementation is appropriate if they show, by clear evidence, that the agency relied on materials not already included in the record.  *See Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (distinguishing between materials "never presented to the agency" and materials that were "allegedly [] before the agency"); *Fence Creek Cattle Co.*, 602 F.3d at 1131.

Nor is defendants' contention that it need only produce documents directly considered by the Acting Secretary correct.  Documents reviewed by subordinates, or other agencies who informed her on the issues underlying the decision to rescind DACA, either verbally or in writing, should be in the administrative record.  *See Lockyer*, 2006 WL 708914, at *2.  The threshold question is whether plaintiffs have shown, by clear evidence, that the record

4

1    defendants produced is missing documents that were considered, directly or indirectly, by DHS

2    in deciding to rescind DACA.[4]

3         **2.    PLAINTIFFS' SHOWING OF INCOMPLETENESS.**

4         Here, the tendered administrative record consists merely of fourteen documents

5    spanning 258 pages, which defendants contend constitute the entire record considered in

6    making the decision to rescind DACA.  These are plainly pertinent materials, although all were

7    publicly known and already part of the pleadings herein.

8         Plaintiffs seek additional materials including emails, departmental memoranda, policy

9    directives, meeting minutes, materials considered by Secretary Duke's subordinates,

10   communications from White House officials or staff, communications from the Department of

11   Justice, and communications between DHS and state authorities, which they contend should

12   necessarily be part of the administrative record (Br. at 9–10).

13        Plaintiffs drew this list, in part, from a United States Department of Justice Guidance,

14   which sets forth non-binding recommendations for how to compile an administrative record and

15   what to include.  United States Dep't of Justice, Env't and Nat. Res. Div., Guidance to Federal

16   Agencies on Compiling the Administrative Record (Jan. 1999).  Specifically, the Guidance

17   states that the administrative record should "[i]nclude all documents and materials prepared,

18   reviewed, or received by agency personnel and used by or available to the decision-maker,

19   even though the final decision-maker did not actually review or know about the documents

20   and materials."  *Id.* at 3.  It further provides that the record should include "communications

21   the agency received from other agencies . . . documents and materials that support *or* oppose

22   the challenged agency decision . . . minutes of meetings or transcripts thereof . . . [and]

23

24

_____

25        [4]  Defendants also argue that they should not be required to produce any administrative record
     whatsoever because the Department of Homeland Security's decision to end DACA was an exercise of
26   prosecutorial discretion not subject to judicial review (Opp. at 1).  Earlier in these actions, our defendants
     agreed to produce the administrative record by October 6, and were then ordered to do so.  They may not now
27   renege on that commitment.  At this stage, defendants are required to produce an administrative record.  Should
     they prevail on this argument on their eventual motion to dismiss, it will be with the benefit of a proper
28   administrative record.

United States District Court

For the Northern District of California

1  memorializations of telephone conversations and meetings, such as memorandum or

2  handwritten notes."[5]

3      Plaintiffs contend that communications from DOJ and the White House are a critical

4  part of "the whole record" due to their significant public participation in the process of

5  rescinding DACA.  Plaintiffs first point to Attorney General Sessions' September 4 letter,

6  which DHS expressly relied upon in its memorandum terminating the program (*see* Dkt. No.

7  64-1 at 251, 255).  Despite this critical and publicly disclosed role in the decision, the only DOJ

8  document defendants include in the record is this one-page September 4 letter.  This, plaintiffs

9  contend, is clear evidence that defendants omitted documents supporting (or contradicting) the

10  opinions set forth in Attorney General Sessions' letter, in particular the opinion that DACA was

11  unlawfully implemented.

12      Additionally, the White House has repeatedly emphasized the President's direct role

13  in decisions concerning DACA.  For example, a September 5 White House press release

14  announced "President Donald J. Trump Restores Responsibility and the Rule of Law to

15  Immigration" by rescinding DACA, and repeatedly stated that "President Trump" had acted to

16  end the program.   Press Release, The White House Office of the Press Secretary, President

17  Donald J. Trump Restores Responsibility and the Rule of Law to Immigration (Sept. 5, 2017),

18  https://www.whitehouse.gov/thepress-office/2017/09/05/president-donald-j-trump-restores-

19  responsibility-and-rule-law.  Other articles likewise emphasize White House officials' roles

20  in decision-making regarding DACA.  *See, e.g.*, Michael D. Shear & Julie Hirschfeld Davis,

21  Trump Moves to End DACA and Calls on Congress to Act, *New York Times* (Sept. 5, 2017).

22  Moreover, defendants concede in their response that Secretary Duke "received advice from

23  other members of the executive branch" in making her decision (Opp. at 17) and refer to "White

24  House memorandum" in their privilege log (Dkt. No. 71-2).  And at oral argument, counsel for

25

26      [5]  A 2008 DOJ memorandum specifically notes that the 1999 Guidance is a non-binding internal
    document, which does not "limit the otherwise lawful prerogatives of the Department of Justice or any other
27  federal agency" (Dkt. No. 71-1 at 3).  In particular, the 2008 memorandum takes issue with outside parties' use
    of the Guidance in litigation to advocate for a particular composition of the administrative record or process for
28  its assembly (*ibid.*).  Recognizing that the 1999 Guidance is not binding upon agencies, this order finds that the
    Guidance nevertheless provides helpful insight into the types of documents and materials an agency should
    consider when assembling an administrative record.

6

1   defendants said it was likely Secretary Duke had received verbal input before making her

2   decision.  Despite this, defendants have failed to provide even a single document from any

3   White House officials or staff.

4        Plaintiffs further observe that not a single document from one of Secretary Dukes'

5   subordinates is in the record.  It strains credulity to suggest that the Acting Secretary of DHS

6   decided to rescind a program covering 800,000 enrollees without consulting one advisor or

7   subordinate within DHS.  Again, at oral argument, government counsel represented that she

8   had likely received verbal input.  The government's *in camera* submission confirms that she

9   did receive substantial DACA input.

10       Finally, former DHS Secretary John Kelly issued a memorandum in February 2017,

11  in which he rescinded all DHS memoranda that conflicted with newly stated immigration

12  enforcement policies — *but expressly declined to rescind DACA*  (Dkt. No. 64-1 at 229–30).

13  This decision, of course, is directly contrary to that taken by Acting Secretary Duke seven

14  months later.  The administrative record, however, omits all materials explaining the change

15  in position from February to September, with two exceptions — (1) a June 29 letter from Ken

16  Paxton, the Attorney General of Texas, to Attorney General Sessions, in which he threatens

17  to amend the suit challenging DAPA to also challenge DACA if it is not rescinded by

18  September 5, and (2) Attorney General Sessions' September 4 letter to Secretary Duke

19  expressing the opinion that DHS should rescind DACA.  Reasoned agency decision-making

20  ordinarily "demand[s] that [the agency] display awareness that it is changing position" and

21  "show that there are good reasons for the new policy."  *F.C.C. v. Fox Television Stations, Inc*.,

22  556 U.S. 502, 515 (2009).  Accordingly, "the whole record" would ordinarily contain materials

23  giving a "reasoned explanation . . . for disregarding the facts and circumstances that underlay or

24  were engendered by the prior policy."  *Ibid*.  It is simply not plausible that DHS reversed policy

25  between February and September because of one threatened lawsuit (never actually filed)

26  without having generated any materials analyzing the lawsuit or other factors militating in favor

27  of and against the switch in policy.

28

United States District Court

For the Northern District of California

1       Based on the foregoing, plaintiffs have clearly shown that defendants excluded highly

2   relevant materials from the administrative record and in doing so have rebutted the presumption

3   that the record is complete.

4       Defendants' argument to the contrary is unpersuasive. Their position that only selected

5   documents that Acting Secretary Duke personally reviewed need be part of the administrative

6   record must yield to legal authority requiring both directly and *indirectly* considered documents

7   be included in the record, *see, e.g.*, *Thompson*, 885 F.2d at 555–56, and by public statements

8   illustrating both DOJ and the White House's direct involvement in the decision to rescind

9   DACA. The rule that government counsel advocates would allow agencies to contrive a record

10  that suppresses information actually considered by decision-makers and by those making

11  recommendations to the decision-makers, information that might undercut the claimed rationale

12  for the decision.

13      As stated, privilege log entries reveal several documents that were considered in arriving

14  at the decision to rescind DACA. For example, at least seven entries refer to commentary in

15  media articles regarding DACA. At oral argument, government counsel admitted that the

16  Acting Secretary had seen several media items on the issue. There were not, however, any

17  media articles on DACA in the administrative record, but those that came to the Acting

18  Secretary should, of course, be included.[6]

19      Here, plaintiffs have rebutted the presumption of completeness. It is evident that Acting

20  Secretary Duke considered information directly, or indirectly, through the advice of other

21  agencies and others within her own agency. These documents, as set forth in detail below,

22  should be made part of the administrative record and must be produced by defendants in an

23  amended administrative record by **NOON ON OCTOBER 27**.

---

25      [6] Many documents were evidently excluded in their entirety based on an assertion of "deliberative-
process" privilege. Any "[f]actual portions of documents covered by the deliberative process privilege,
26  [however], must be segregated and disclosed unless they are so interwoven with the deliberative material" that
they are not segregable. *See Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir 2008) (citations
27  and quotations omitted). Accordingly, to the extent that media articles or other non-privileged factual materials
were considered, they should have been included in the administrative record, and shall be filed as part of the
28  amended administrative record, even if passages are redacted as deliberative, and called out as such in the
privilege log.

8

**United States District Court**
For the Northern District of California

### 3.     WAIVER OF ATTORNEY-CLIENT PRIVILEGE.

Plaintiffs next argue that defendants have waived attorney-client privilege because they have put their attorneys' legal opinions at issue by arguing that the rescission was required due to concerns over DACA's legality (Br. at 15–16).  Indeed, one of DHS's primary rationales for rescinding DACA was its purported illegality (*see* Dkt. No. 64-1 at 253–56 (Rescission Memorandum)).

Parties are not permitted to advance conclusions that favor their position in litigation, and at the same time shield the information that led to those conclusions from discovery. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).  Put differently, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield."  *Ibid*.  Where a party raises a claim, which in fairness to its adversary requires it to reveal the information or communication that claim is predicated upon, it has implicitly waived any privilege over that communication.

Here, defendants argue that DHS had to rescind DACA because it exceeded the lawful authority of the agency.  They cannot, therefore, simultaneously refuse to disclose the legal research that led to that conclusion.  Defendants indeed, have included the September 4 legal opinion of the Attorney General, pithy as it may be — yet they seek to conceal all other legal analysis available to the Acting Secretary and to the Attorney General.

Significantly, defendants slide into a backup argument that the agency's legal worry was "reasonable" even if wrong.  If this backup argument comes into play (as government counsel posits) then the "reasonableness" of taking an incorrect legal position would heavily turn on the underlying legal analysis so far withheld from view.   In other words, assessing the reasonableness of the Secretary's legal rationale would turn, in part, on how consistent the analysis has been in the runup to the rescission.

Defendants' arguments to the contrary are unavailing.  They first argue, without citation to any legal authority, that "[w]ere plaintiffs' argument accepted, the government would be deemed to have waived all privileges any time an assessment of the legal landscape informed an agency's decisionsmaking" (Opp. at 21).  This argument vastly exaggerates plaintiffs' position,

Add. 23

United States District Court

For the Northern District of California

1    and misrepresents the position defendants have staked out in this litigation.  DHS specifically

2    relied upon DOJ's assessment that DACA "was effectuated . . . without proper statutory

3    authority," "was an unconstitutional exercise of authority by the Executive Branch" and "has

4    the same legal and constitutional defects that courts recognized as to DAPA" (Dkt. No. 64-1 at

5    254).  Plaintiffs are entitled to challenge whether this was a reasonable legal position and thus a

6    reasonable basis for rescission.  In making that challenge, plaintiffs are entitled to review the

7    internal analyses that led up to this change in position.

8         Defendants further argue that the decisions cited by plaintiffs are inapplicable because

9    they arose in different contexts than the present action.  True, the decisions plaintiffs cite did

10   not arise in identical circumstances.  *E.g. Chevron Corp*., 974 F.2d at 1162 (defendant

11   prohibited from relying on legal opinion that tax position was reasonable while refusing to

12   disclose the attorney communications leading to that conclusion).  They still, however, stand for

13   the widely-accepted proposition that it is unfair for a litigant to defend his action with a

14   selective disclosure of evidence.  This principle carries no less force here.

15        In the related context of FOIA, the Court of Appeals for the Second Circuit held that

16   "the attorney-client privilege may not be invoked to protect a document adopted as, or

17   incorporated by reference into an agency's policy."  *Nat'l Council of La Raza v. Dep't of*

18   *Justice*, 411 F.3d 350, 360 (2d Cir. 2005).  There, DOJ invoked the reasoning of an OLC

19   memorandum to justify its new position on an immigration issue.  *Id.* at 357.  The court held

20   that the agency's "view that it may adopt a legal position while shielding from public view the

21   analysis that yielded that position is offensive to FOIA."  *Id.* at 360.  So too here.

22        Defendants have waived attorney-client privilege over any materials that bore on

23   whether or not DACA was an unlawful exercise of executive power and therefore should be

24   rescinded.

25       **4.**    **DELIBERATIVE-PROCESS PRIVILEGE BALANCING.**

26        Defendants further assert the deliberative-process privilege over many documents.

27        The deliberative-process privilege, however, is qualified and will yield when the need

28   for materials and accurate fact-finding "override the government's interest in non-disclosure."

Add. 24

United States District Court

For the Northern District of California

1   *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).  "Among factors to

2   be considered in making this determination are:  (1) the relevance of the evidence; (2) the

3   availability of other evidence; (3) the government's role in the litigation; and (4) the extent to

4   which disclosure would hinder frank and independent discussion regarding contemplated

5   policies and decisions."  *Ibid.*

6          As set forth below, the judge has personally reviewed *in camera* all materials on the

7   privilege log and applied the foregoing test to each document for which the deliberative-process

8   privilege is claimed.[7]

9          **5.     PRIVILEGE LOG REQUIREMENT.**

10          While defendants did not file a privilege log with their original production, they have

11   since, pursuant to order, filed a privilege log claiming attorney-client or deliberative-process

12   privilege over 84 documents considered by Secretary Duke but not included in the

13   administrative record (Dkt. Nos. 67; 71-2).  Nevertheless, defendants argue that privilege logs

14   are not generally required in connection with an administrative record and that one should not

15   be required here.

16          Our court of appeals has not spoken on the issue.  Every court in this district

17   considering the issue, however, has required administrative agencies to provide a privilege log.

18   *See, e.g.*, *Ctr. for Food Safety v. Vilsack*, No. 15CV01590HSGKAW, 2017 WL 1709318, at *5

19   (N.D. Cal. May 3, 2017) (Magistrate Judge Kandis Westmore) ("[C]ourts in this district have

20   required parties withholding documents on the basis of the deliberative process privilege to, at a

21   minimum, substantiate those claims in a privilege log."); *Inst. for Fisheries Res. v. Burwell*, No.

22   16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) (Judge Vince Chhabria);

23   *Lockyer*, 2006 WL 708914, at *4.

24

25

26

27          ───────────────

          [7]  Although not addressed in the brief or at oral argument, the privilege log referenced personal privacy
28   and executive privilege objections for certain documents.  No substantial privacy interest is implicated in any of
     the documents ordered to be produced below, nor do any of these documents fall within the executive privilege.

"If a privilege applies, the proper strategy isn't pretending the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege." *Inst. for Fisheries Res.*, 2017 WL 89002 at *1.[8]

Courts outside this district that have determined no privilege log was required have done so on the grounds that the defendants' judgment of what constitutes the administrative record is entitled to a presumption of correctness. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 115CV01290LJOGSA, 2016 WL 3543203, at *19 (E.D. Cal. June 23, 2016) (Judge Lawrence O'Neill); *Nat'l Ass'n of Chain Drug Stores v. United States Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009). Here, however, that presumption has been overcome by plaintiffs' showing that defendants failed to include documents considered in arriving at the final decision to rescind DACA in the administrative record. Therefore, even applying those courts' logic, a privilege log would still be appropriate here.

Going forward, defendants shall comply with the standing order in this case and provide a privilege log for all documents withheld on grounds of privilege, which log shall include all authors and recipients of privileged documents, as well as other information set forth in the rule (*see* Dkt. No. 23 ¶ 18).

**RELIEF ORDERED**

Plaintiffs' motion to complete the administrative record is **GRANTED** to the extent now stated. Defendants are directed to complete the administrative record by adding to it all emails, letters, memoranda, notes, media items, opinions and other materials directly or indirectly considered in the final agency decision to rescind DACA, to the following extent: (1) all materials actually seen or considered, however briefly, by Acting Secretary Duke in connection with the potential or actual decision to rescind DACA (except as stated in the next paragraph below), (2) all DACA-related materials considered by persons (anywhere in the government) who thereafter provided Acting Secretary Duke with written advice or input regarding the

---

[8] In a memorandum opinion, our court of appeals denied a plaintiff's request to require a privilege log. *See Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (2010). In that decision, however, our court of appeals first denied a motion to supplement the record, and finding that the plaintiffs had not presented evidence that the agency had considered the documents the plaintiffs sought to compel, only then denied the accompanying motion for preparation of a privilege log without further explanation.

United States District Court
For the Northern District of California

1  actual or potential rescission of DACA, (3) all DACA-related materials considered by persons

2  (anywhere in the government) who thereafter provided Acting Secretary Duke with verbal input

3  regarding the actual or potential rescission of DACA, (4) all comments and questions

4  propounded by Acting Secretary Duke to advisors or subordinates or others regarding the actual

5  or potential rescission of DACA and their responses, and (5) all materials directly or indirectly

6  considered by former Secretary of DHS John Kelly leading to his February 2017 memorandum

7  not to rescind DACA.

8          The undersigned judge has balanced the deliberative-process privilege factors and

9  determined *in camera* that the following materials from the government's *in camera*

10  submission, listed by tab number, shall be included in the administrative record: 1–6, 7 (only

11  the header and material on pages 3–4 concerning DACA), 12, 14, 17–25, 27–30, 36, 39, 44, 47,

12  49 (only the first paragraph, and the paragraph captioned "General"), 69–70, 73–74, 77, 79, 81,

13  84.  The remainder of the *in camera* submission need not be included.

14          If the government redacts or withholds any material based on deliberative-process, or

15  any other privilege in its next filing, it shall simultaneously lodge full copies of all such

16  materials, indicating by highlighting (or otherwise) the redactions and withholdings together

17  with a log justification for each.  The judge will review and rule on each item.

18          Plaintiffs' insistence that defendants scour the Department of Justice and the White

19  House for documents for inclusion in the administrative record is overruled except to the

20  limited extent that DOJ or White House personnel fall within the category described in the first

21  paragraph above as someone who gave verbal or written input to the Acting Secretary.  Nor do

22  defendants have to search for DACA materials below the agency levels indicated in the first

23  paragraph above.  These are intended as practical limits on what would otherwise be a bone-

24  crushing expedition to locate needles in haystacks.

25          This order, however, is not intended to limit the scope of discovery (as opposed to the

26  scope of the administrative record).  The scope of discovery over and above the administrative

27  record continues to be managed by Magistrate Judge Sallie Kim.

28

United States District Court
For the Northern District of California

The federal defendants shall file an amended administrative record in conformity with this order by **NOON ON OCTOBER 27**.

If any party plans to seek a writ of mandate and wants a stay pending appellate review, then a fresh motion to that effect must be made very promptly.

**IT IS SO ORDERED.**

Dated: October 17, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

1

2

3

4

5

6                              IN THE UNITED STATES DISTRICT COURT

7

8                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10    THE REGENTS OF THE UNIVERSITY OF
      CALIFORNIA and JANET NAPOLITANO,
11    in her official capacity as President of the          No. C 17-05211 WHA
      University of California,                              No. C 17-05235 WHA
12                                                           No. C 17-05329 WHA
                         Plaintiffs,                         No. C 17-05380 WHA
13
14           v.

15    UNITED STATES DEPARTMENT OF                     **ORDER RE MOTION TO STAY**
      HOMELAND SECURITY and ELAINE                    **PROCEEDINGS**
16    DUKE, in her official capacity as Acting
      Secretary of the Department of Homeland
17    Security,

18                       Defendants.
                                                    /
19

20           An October 17 order required federal defendants to complete the administrative record,

21    including by providing all materials directly or indirectly considered by the Acting Secretary of

22    the Department of Homeland Security in connection with her decision to rescind the Deferred

23    Action for Childhood Arrivals ("DACA") policy, as well as all materials considered by those

24    who advised the Acting Secretary (Dkt. No 79).

25           On October 18, federal defendants filed this motion seeking a stay of certain

26    proceedings — including all discovery and further proceedings concerning composition of the

27    administrative record — pending resolution of a writ of mandamus appealing the October 17

28    order, which writ they will file with our court of appeals no later than October 20 (Dkt. No. 81).

      All parties stipulated to an expedited briefing schedule, pursuant to which plaintiffs filed a

*United States District Court*
For the Northern District of California

1    response at 5:00 p.m. today.  With the benefit of the parties' briefing, this order now **DENIES**

2    federal defendants' motion for a stay.

3        Whether to grant a stay is, in the first instance, in the discretion of the district court.

4    *Nken v. Holder*, 556 U.S. 418, 433 (2009).  That discretion is guided by a four-factor test, under

5    which courts consider:  "(1) whether the stay applicant has made a strong showing that he is

6    likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a

7    stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

8    proceeding; and (4) where the public interest lies."  *Ibid*. (citations and quotations omitted).

9        These factors do not favor our federal defendants.  The contentions federal defendants

10    rely upon in arguing that they are likely to succeed on the merits are largely duplicative of their

11    arguments opposing completion of the administrative record, which were rejected by the

12    October 17 order.  For the same reasons set forth therein, these arguments remain unavailing.

13    Federal defendants additional arguments are likewise unpersuasive.  They offer a strained and

14    inaccurate interpretation of 8 U.S.C. 1252(g) in support of their position that the decision to

15    rescind DACA is unreviewable.  Section 1252(g), however, only bars judicial review of

16    decisions "by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3]

17    execute removal orders," none of which are at issue here.  This provision has been "narrowly

18    construed" and is plainly inapplicable to this action.  *See Kwai Fun Wong v. United States*, 373

19    F.3d 952, 964 (9th Cir. 2004).  Nor does federal defendants' argument regarding the Court's

20    position on whether Acting Secretary Elaine Duke is subject to deposition — a topic not yet

21    formally raised in this action or properly the subject of defendants' mandamus petition — show

22    that they are likely to succeed.

23        Most importantly, a stay will likely result in substantial and irreparable harm to our

24    plaintiffs, and to those parties most interested in these proceedings, people who are currently

25    enrolled in DACA.  All face a March 5, 2018 deadline, on which date the Department of

26    Homeland Security has determined to end DACA.  On that day, people currently living and

27    working in the United States will begin to lose the protections afforded by DACA.  The Court

28    intends to reach a decision before the March 5 deadline, on a substantial and complete record,

2

which can be reviewed by our court of appeals, and has set a schedule that will accomplish this. A stay risks allowing this deadline to pass without a decision on the merits, and therefore poses a substantial threat to our plaintiffs and to DACA enrollees.

Moreover, any alleged "irreparable harm" imposed upon the government related to their discovery burden pales in comparison to that which will be faced by DACA enrollees. Nor will privileged government communications be publicly disclosed, as the undersigned judge has reviewed, and as necessary will continue to review such documents, submitted *in camera*, and withhold from public view those that require withholding.

Finally, the public's interest is best served by a thorough, transparent, and expeditious resolution of this litigation. Federal defendants' argument that this action and one other lawsuit pending in New York have diverted resources from the Department of Homeland Security's mission of protecting the United States is not well taken. The federal government is certainly equipped to participate in this litigation and continue to perform its core functions.

Though federal defendants analyze their motion under the four-factor test set forth above, they also suggest that a different test applies here since they seek to stay a proceeding as opposed to only staying an order or judgment. That test asks "whether (1) resolution by the Ninth Circuit of the issue addressed in [the appealed order] could materially affect this case and advance the ultimate termination of litigation and (2) whether a stay will promote [ ] economy of time and effort for the Court and the parties." *American Hotel & Lodging Ass'n v. City of Los Angeles*, No. CV 14-09603-AB (SSX), 2015 WL 10791930, at *3 (C.D. Cal. Nov. 5, 2015) (Judge Andre Birotte Jr.) (internal citations and quotations omitted).

This, however, is mere slight of hand. Federal defendants are not seeking to stay "all proceedings in the DACA cases" as they state in their notice of motion (Dkt. No. 81 at 1), but rather are seeking to "stay discovery and further proceedings concerning the composition of the administrative record pending a ruling on [their] upcoming motion to dismiss" as they clarify in their memorandum of points and authorities (*id.* at 1–2). In other words, they are moving to stay the October 17 order — a motion to which the four-part *Nken* test applies — while continuing to litigate only their affirmative case. This is improper.

1    Even under the test set forth in *American Hotel & Lodging*, however, defendants motion

2    still fails.  *First*, a stay will not promote economy of time and effort.  In fact, it will have the

3    opposite effect.  It will prolong proceedings and in all likelihood duplicate efforts by creating a

4    delay, which requires litigation first on the issue of provisional relief followed by a second

5    round of litigation on the merits.  This will result in a waste of time and resources.

6    *Second*, staying discovery and proceedings concerning composition of the

7    administrative record will not advance the litigation.  An appellate decision on the composition

8    of the administrative record can be made now or later, as our court of appeals prefers, but we

9    ought to continue making progress on the merits while that court considers the issue.

10    For the foregoing reasons, federal defendants' motion to stay proceedings is **DENIED**.

11    This action shall continue on the schedule set forth in the September 22 Scheduling Order (Dkt.

12    No. 49).  Even in the unfortunate event that the administrative record is not settled (due to

13    appellate proceedings), our briefing schedule will nevertheless allow an orderly assessment of

14    whether or not provisional relief is warranted.

15

16

17    **IT IS SO ORDERED.**

18

19

20    Dated:   October 19, 2017.

21                                                                      WILLIAM ALSUP
                                                                        UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

4